Good morning. Good morning. May it please the Court, Christopher J. Stender on behalf of the petitioner Gustavo Escobedo-Fernandez, and I would like to reserve two minutes of my time for rebuttal. In this petition, what we are asking, what the petitioner is requesting is his bite of the apple. As both the immigration judge and the BIA held that the departure bar prohibited him from, prohibited them from considering the petitioner's motion to reopen, thereby effectively denying it on procedural grounds, this Court should order the matter be reopened or, in the alternative, that this matter should be remanded to the Board of Immigration Appeals with instructions to consider the petitioner's motion to reopen his deportation matter. At the time of both the immigration judge's and the Board of Immigration Appeals' decision, this Court's present decision, Linn v. Gonzalez, was in force and in effect and was binding upon both the immigration judge and the Board of Immigration Appeals when making their decision. Neither the Board nor the immigration judge considered Linn in making their decision. The petitioner of this matter is similarly situated to the petitioner in Linn. He was removed, reentered, and then filed the motion to reopen. And like Linn, the government argued that the departure bar, that the departure bar applied and, therefore, that the immigration judge and the BIA were without jurisdiction to consider the motion to reopen. As both the EIJ and the BIA erroneously concluded that they had no jurisdiction to consider the merits of the motion to reopen, and whether, for example, in exceptions the motion would apply like timeliness or other issues, this matter should be remanded. Why was the motion to reopen denied in this case? The immigration judge doesn't cite any law. She disagrees with the DHS. Why was the motion denied? No speeches. Why was the motion denied? Departure bar. And what was the timeframe between the deportation and the motion? Twelve years? Twelve years. Many years. Is that a problem? It is a problem. It is a problem. It's a lengthy period of time. But nonetheless. That's a massive problem. It is a massive problem. But those are the facts that we have in this case, Your Honor. No, you know, going back to what happened at the time of the original deportation hearing in front of the immigration judge, the Petitioner was eligible for 212c relief. The case was repeatedly continued by the immigration judge to the time when 212c became unavailable. In a very brief hearing, the immigration judge basically orders the Respondent the Petitioner in this matter deported and finds that he's ineligible for 212c relief. Appeal is reserved and no appeal is filed. And then eventually, I think that same year in September, he is actually deported, removed to Mexico. But he could have appealed that determination at that time way back when. There's no doubt. And in my opinion, had he appealed, certainly I think the law then eventually changes about two years later. It went back and forth, but eventually he would have been found eligible. But if he did appeal, what were the results of it at that time? I mean, wasn't he lawfully deported at that time based upon the existing law that existed at that time? Well, I think if you look at the administrative record, there is a problem that I think the immigration judge glosses over. It's never brought up. And I think the attorney never says anything. And just because appeal was reserved by counsel doesn't mean that the Petitioner had appellate counsel, that he had any counseling that he should appeal, that he should proceed with his right. Appeal is reserved and the record's silent what happens after that. But, correct, factually no appeal is filed. Second, I'm sorry. The question was if an appeal had been filed, what would have been the likely outcome? What issues would have been raised and what would have been the like? So you don't you can't discern any meritorious issues that could have been raised on appeal? I can't. No, absolutely. Administrative record page 145 and 150 to 154 contains the conviction documents. The conviction documents in this case are very problematic because they're incomplete. The complaint that's in the record goes through counts 1 through 5, yet the Petitioner is convicted of counts 1, 2, 3 and 7, which is not even listed in the complaint. There are multiple defendants and you don't have a clear idea what he was convicted of. So that would have been the issue that would have been appealed, whether or not the Petitioner was properly convicted of an aggravated felony. Is that what would have been appealed?  If there had been an appeal. Yes, absolutely. So the Did he contest that? I don't we have an unofficial transcript. I'm sorry. It looks like he didn't contest it. Unfortunately, because an appeal wasn't filed, there was no official transcript prepared. There was a recording. We made an unofficial transcript and, yes, it looks like his counsel did not raise that issue. Looking at the document itself, but the immigration judge also has to make a decision that's based on the evidence. And looking at the evidence in this case, there wasn't sufficient evidence for the immigration judge to find that he was convicted of an aggravated felony. But in effect, you're asking us 12 many years later to basically be the appellate court, so to speak, that would have been convened if there were a lawful appeal way back when. I mean, you're asking us to go back in time and make that appellate determination now. I think that's the substance of what you're asking us to do. In essence, I think that is correct. We're not arguing that that isn't correct, but that is in fact what happened. And I think everybody would be in agreement that if this case had gone up on appeal, the Respondent, the Petitioner, would have been eligible for 212C relief and perhaps not even deportable. The record itself is unclear. And getting back to the legal issue is the board and the immigration judge never look at the merits of the case because they reject the motion on a incorrect legal basis that they had no jurisdiction. That's not the law of this circuit. The controlling law is Lynn and also Reynosa Cisneros, and they were bound by those  They should have been. But does the board have to take an untimely appeal, even an untimely motion to reopen to consider after decided law? They don't have to, but they could. They could sue a sponsor, reopen. They could look at the merits. Oh, we can't review that. You can't. But they can't reject it on a procedural ground that's incorrect. They could have looked at the merits and rejected on many, many other reasons, but they don't. They say, well, we don't have jurisdiction. Departure bar applies. We agree with the immigration judge adopted. We're not going to look at it. Well, they could look at it and say it's too late, right? There's lots of things. Yes. I mean, there were other ways the board could have rejected this that would have been well within the four corners of the law, but they didn't do that. The I.J. didn't do that. We filed a motion to reconsider and said, please look at this. The departure bar doesn't apply. Government has argued we didn't exhaust. We did raise that issue that, in fact, in exactly that language, that the departure bar doesn't apply, and that issue was exhausted during the motion to ‑‑ it's styled as a motion to reopen, motion to reconsider, and it specifically says that the ‑‑ we state, quote, that the respondent has been previously deported does not foreclose the relief requested by the respondent. We cited Cardozo, Tlaseka, that motions to reopen after removal remain viable. Let me ask you this. If he were or had been lawfully deported, would you agree that the subsequent change in the law would be of no moment, that we could not reconsider the issue if he were lawfully deported? Accepting that premise, yes, there is case law that says if the deportation order was lawfully executed at the time, notwithstanding the subsequent ‑‑ If you have Alvarez in circuit and Avila, that closes the door on that issue. So it all depends on whether or not you want to challenge the lawfulness of his deportation now to over 13 years later. Well, I think in a sense, yes, you're correct, Judge Block. It does. But it also does turn on the fact that neither the IJA or the BIA performed their function and neither of them applied the law of the circuit that they have to at least look at the issues. That's all we've asked for is that they look at those issues and make a decision based on the merits of the case. Well, they don't have to look at the issues if procedurally the motion is flawed. So if the motion is a second or successive motion to reopen, or if it's untimely, they don't have to look at it, the merits. But then they have to say that, and they have to give those reasons, and they didn't do that here. And that's all we're asking for, again, is our bite at the apple. I don't think he had it when he had his original counsel, and he certainly didn't get it on these motions. And when we alerted the board to these issues, they just glossed over it and refused to look at it again. Certainly, there's we're just asking for a bite at the apple, that they look at the merits of the case. And should this case be looked at properly, should it be reopened, I think quite clearly the Petitioner would prevail not only on the issue of whether or not he's deportable, but also whether or not it's an aggravated felony, and also 212C relief. We never even get to the equities. None of those issues are in the record. Look at the administrative record. It's very sparse. Many, many issues, of course, were not brought to the Court's attention. But, again, what we have is just the fact that they're being front-doored, that the courts are refusing to even look at the merits of the motion on a procedural ground, which is an incorrect application of this Circuit's law. All right. Thank you, counsel. We'll give you a minute for rebuttal. May it please the Court. Lisa Damiano on behalf of the Attorney General. Good morning to you all. Good morning. Despite the myriad of claims raised by Petitioner in these consolidated petitions for review, the dispositive issue in this case, ultimately dispositive, is that Mr. Escobedo's 1997 deportation order has been properly reinstated by the Department of Homeland Security. Petitioner has never challenged that. He said he didn't want to make a statement contesting that determination. Absolutely. Petitioner's counsel discusses his bite at the apple. However, Petitioner did not appeal the 1997 decision, even though he was represented by counsel and reserved appeal. He didn't make any subsequent motions until 12 years later, until the Department of Homeland Security began the reinstatement proceedings. The reinstatement proceedings began on the 6th of May, and then he filed his motion to the judge on the 13th. Now, Petitioner characterizes the judge's decision to deny the motion as departure bar. The judge's decision could be more thoroughly worded. However, she mentions departure of Petitioner, and also that DHS has begun the reinstatement proceedings. Therefore, she lacked jurisdiction because under 8 U.S.C. 1231-85, a case may not be reopened or reviewed once a reinstatement proceeding has begun and once that order has been reinstated. But did she cite that provision? No, she did not. That's a little problematic. It is problematic. However, she her rationale is correct. She did not have jurisdiction to reopen or review the underlying deportation order when it's being reinstated. So is it your position that we could affirm on that basis, even though the I.J. did not cite to the particular regulation? Absolutely. I do. We believe that ultimately dispositive in this case is the reinstatement. And then even if the court remanded, it would be futile, because in the end, no, the order may not be reopened, it may not be reviewed, and he is not eligible to file for any relief by virtue of his illegal reentry after he was lawfully deported in 1997. The court does not need to reach the departure bar issue in this case, because even if he's successful on his issues with regard to the departure bar, he still has that lawful reinstatement, which he's never contested any of the factual findings in the underlying restatement. He actually concedes he was ordered deported in 97 and that he departed pursuant to that deportation order. So what he's doing now in his opening brief is to try to collaterally attack that underlying order by claiming a gross miscarriage of justice. And this Court, I believe, has found that there could be no gross miscarriage of justice when the underlying order was valid and lawful at the time it was entered. Well, I understood that he was trying to say that the motion to reopen was improperly without any consideration of the merits of it. Well, I do see that, Your Honor. And again, the judge says that she can't entertain that motion because he's departed the United States, and she also says because the Department of Homeland Security has reinstated or has begun reinstatement proceedings. We would argue that the board's decision affirming the judge's denial is also proper, even though it relies on the departure bar, and here's why. We've kind of been advancing under the assumption that this particular petitioner had a statutory right to file a motion to reopen, but this petitioner was put into proceedings, deportation proceedings, prior to 8 U.S.C. 1229 A.C. 7, which codifies the statutory right to file a motion to reopen. He only had a regulatory right to file a motion to reopen. So all of the departure bar litigation over the last several years, Coit, Reyes-Torres, they're founded on the premise that the departure bar regulation is at odds with the alien statutory right to file a motion to reopen. And Mr. Escobedo in this case had no statutory right to file a motion to reopen because he was under deportation proceedings. Well, the problem is that the I.J. mentioned that, but the BIA didn't, and that's the decision we're reviewing. Well, the board so the board's initial decision from the judge's denial relies on the departure bar, and we are arguing that the board's interpretation of the departure bar in matter of Armendariz, excuse me, is entitled to deference, that an agency's interpretation of its own regulations is entitled to deference, and that this case is distinguishable from the Ninth Circuit's precedential opinions in Coit, Reyes-Torres, etc. Even if he had a statutory right to file a motion to reopen, those cases, there were timeliness, questions of timeliness. Reyes-Torres was timely. Coit, there was a question as to timeliness. This is 12 years later, 12 years after an order of deportation, 12 years after he's illegally reentered, assuming he reentered soon thereafter. We're not sure when he reentered. But 12 years later, there's no argument that could be made for timeliness, so it's distinguishable from those cases on that fact. It's also distinguishable because all of those cases deal with an alien that has a statutory right to file a motion to reopen, one motion to reopen within 90 days. And here, Mr. Escobedo only had the regulatory right. So we're arguing that the board's interpretation of matter of armanduras should be given under matter of armanduras, excuse me, should be given deference, and that the departure bar is not at odds with his right to file a motion to reopen. So the board's decision was correct. It relies on the departure bar, and we're arguing that that was a correct board decision. I'm not sure that our precedent would support that decision. Well, I do understand that the Ninth Circuit's precedent has chipped away or found, you know, situations where the departure bar is invalid. Again, like I said, Coit, there was the timeliness question. You remanded for the board to determine whether it was a timely motion. In Reyes-Torres, it was a timely motion filed within a month. So in this case, he has no statutory right to file a motion within 90 days. The board could have easily disposed of this motion by saying it was untimely rather than importing the departure bar into the scenario. And it probably will if we were to grant the petitioner remand. Absolutely. I mean, I can't speak to what the board will do, but that could be a scenario. And I think in our brief, towards the end on page 53, I do argue the futility doctrine or futility argument that if you remand, the board can find, can dismiss on the reinstatement, because we have that above and beyond everything else. They can also deny the motion based on untimeliness. The problem is we don't have the ability to do harmless error when it's a case like this, or do we? Is there a case that you can cite to us that says if the remand would be futile, then we can deny the petition on that basis? The only case I think I cite to is De Jesus Melendez, but I don't believe it stands for that exact premise that Your Honor is speaking about. However, like I said at the onset, the Court does not need to reach the departure bar issue in this case. At least that's what Respondent's position is. We believe that this case can be disposed of based on the reinstatement because it was lawful. Petitioner has not challenged the reinstatement proceedings themselves. He's not raised any tolerable constitutional claims with regard to the reinstatement. He only attempts to collaterally attack the underlying order. But how does that, even if that's true, that the reinstatement was valid, how does that resolve the motion to reopen issue? Because the statute itself that describes reinstatement, 8 U.S.C. 1231-85, says that a deportation order that's reinstated may not be reviewed or reopened, and the alien may not file or apply for any relief. So an alien under reinstatement cannot make any motion to reopen. Okay, but his motion to reopen was for the original deportation, right? I'm sorry. Are you saying that the reinstatement obliterates the original deportation and so there can be no challenge to that? Is that what you're saying? Once the order has reinstated, yes, the alien or Petitioner may not move to reopen that original order and may not apply for any relief. So that's, in essence, even if this case were remanded or returned to the board, the board can dispose of it with the reinstatement. What could he have done to challenge the underlying deportation? Well, again, Petitioner speaks of his bite at the apple. He could have filed an appeal. He could have been ---- He could have filed the appeal, right? Right. He could have filed subsequent motions prior to his. He wasn't deported until September of the year. He was ordered deported in May. Like many other Petitioners in his position, they filed motions to reopen. He could have done that. He could have been like many of the Petitioners who challenged the 212C law and actually ended up advancing and changing that law. He chose not to appeal. He left the country and then he illegally reentered at some point. He only made his motion to reopen 12 years later after the Department of Homeland Security reinstated his order. I see I'm out of time. I have one other question. Sure. A Petitioner does not have to appeal the underlying deportation in order to file a motion to reopen. Oh, no. No. He could have filed a motion to reopen at any time, you know, within that first few months that he ---- before they deported him. He could have filed a motion. He actually could have filed a motion to reopen Suis Ponte at any time thereafter. He also could have filed a special motion for 212C relief, although he had some other barriers to that. He had to be inside the United States and had to, you know, fulfill the requirements of that 212C motion, such as filing before April 2005. All right. Thank you. Thank you. Rebuttal. Yes. Just briefly, regarding the reinstatement, we do challenge it. And what's being glossed over is the fact that the Petitioner was represented by counsel on May 4th, 2009, when the Department of Homeland Security brought the reinstatement order to the Petitioner, who was represented, and they asked him whether or not he wanted to make a statement. Government knew he had counsel, didn't bring it to us. We were properly notified, the Department, that we were representing this gentleman. He is, of course, not an attorney and doesn't know what factors, what arguments should be made that he was eligible. And so to say that the record is silent, that the Petitioner didn't challenge the reinstatement order, this Petitioner was locked up in a jail, didn't have access to counsel, was far away, things were moving very quickly, and to say that just because a box was checked off, he waived the reinstatement issue, is not true. As I've stated, there is a factual dispute regarding whether or not the deportation order was valid or not. And that goes directly to whether or not this order should be reinstated, because But opposing counsel says that once a removal order is reinstated, you can't challenge the original deportation order. Do you agree with that statement of the law? I do not. Because if that, in fact, is true, then you can never challenge a deportation order once it's been executed. Are you making this up, or are you, I mean, there's some law that says that, and you're just saying, well, we don't pay any attention to the law? No, I don't think at all. I think what we've cited in our brief and what I've argued today is, in fact, that if you can file a motion to reopen after an order of removal has been issued, then, of course, you can file it if there is reinstatement proceedings. What case says that? The cases that we cited, Coit and Reyes-Torres, they all talk about it. In the other case we cited about filing a motion to reopen after removal hearing, proceedings have been instituted, even if you've been involuntarily removed from it. No, no, no. After a previous order of removal has been reinstated. That's the concept we're discussing. Do you have a case that says once a removal order has been reinstated, that the original deportation order may still be challenged? What case says that? It's subject to a motion to reopen. I couldn't find such a case. Yeah. I don't have a case that I've read that is strictly on point, but I think the premise is if that, in fact, is true, then you'll never be able to file a motion to reopen post-removal.  No, that's not true. Post-reinstatement of an original deportation order. So then a Petitioner would have to find a way to file a motion to reopen before the DHS would discover them and start reinstatement proceedings? That's the idea. I mean, I don't know that that would make any sense under the circumstances. The system has to come to an end. There has to be some finality in these things.  It gets to look more like a degenerative disease than a way to resolve problems. I mean, we've been at this forever, 12 years in between motions. Now you want it to go back. It will be denied on timeliness. You'll file another petition. It will come up three years from now. I mean, the man will die of natural causes before the system is able to resolve all these issues that you're raising. Well, going all the way back to Wietersburg, I mean, obviously, if a deportation order was not validly issued, it's subject to attack, I believe, at any point. I think that's what you have here. And I think remand is not futile because, as I've discussed, the BIA could suesponsibly open. We can't assume that they would refuse to do so. Looking at the fact that he's a long- They could resolve the fiscal cliff this afternoon. We hope and we pray, Your Honor. I don't have anything further. All right. Thank you. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: Block, Trott, Rawlinson